UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 08-124-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RODERICK L. STEWART, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

After he pled guilty to being a felon in possession of a firearm, the Court sentenced the defendant, Roderick Stewart, to 110 months in prison. R. 25. Almost a year after his sentence was imposed, Stewart filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. R. 27. Stewart argues that (1) his lawyer was ineffective because he did not provide Stewart access to discovery materials, (2) the Court improperly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) after finding that he "used or possessed" a firearm "in connection with another felony offense" or "with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense," and (3) the Court incorrectly calculated his criminal history score. *Id.* After receiving briefing from both Stewart and the United States, Magistrate Judge Edward B. Atkins issued a Report and Recommendation ("R&R") on January 4, 2011, recommending that the Court deny Stewart's § 2255 motion. R. 35. Stewart timely filed objections to Judge Atkins's R&R. R. 36. After reviewing Stewart's original motion, the parties' briefs, the R&R, and Stewart's objections, the Court adopts both the R&R and Judge Atkins's recommended disposition.

# DISCUSSION

## I. Ineffective Assistance of Counsel

Stewart's first claim—that his counsel was ineffective for failing to show him discovery materials prior to trial—is meritless. This claim is based on Stewart's unsupported belief that his trial counsel had discovery materials that he did not share with him. Stewart alleges that, had his attorney shown him these illusive discovery materials, he would not have pled guilty and instead would have elected to go to trial. Or, in Stewart's own words:

> Upon my request [my lawyer] failed to provide me with discovery materials that would have otherwise shown facts of the C.I. and the arresting officer which if I had known I wouldn't [have] accepted a plea and went to trial.

R. 33 at 3. Stewart further elaborated in his objections to the R&R:

> I asked my appointed counsel several times to provide me with discovery materials and he refused to do so each time saying "the only materials are the video tape" which even that he didn't present.
>
> I believe the discovery materials if provided prior to my decision to plead guilty would have given me the information needed to choose trial instead of a guilty plea. However after my request I was never presented with the materials so I to this date don't know the information that was withheld.

R. 36 at 1-2. The R&R explains in detail why these allegations fall far short of a valid claim of ineffective assistance of counsel. R. 35 at 2-6. Without more information, Stewart cannot possibly satisfy either prong of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984)—he cannot show that his counsel's performance "fell below an objective standard of reasonableness," *id.*, or that it caused him prejudice, meaning that there was "a reasonable probability that, but for counsel's errors, [Stewart] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Stewart's threadbare allegations are not even enough to require the Court to hold an evidentiary hearing on his claim. Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, to receive a hearing, a petitioner must make allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008). Here, Stewart has simply alleged in the vaguest of terms that his trial attorney did not show him discovery materials. But he has alleged no facts indicating that additional discovery materials even existed, much less that those materials would likely have changed his mind about pleading guilty.

Further, the alleged existence of additional undisclosed discovery materials is in conflict with an affidavit that Stewart's trial counsel, Eric Edwards, filed into the record at the Court's request. R. 38, Attach. 1. Edwards identified three pieces of discovery that he received from the government in Stewart's case—a lab report showing that the substance involved in the controlled buy was not actually cocaine, Stewart's criminal history, and a CD containing a recording of the phone call arranging the controlled buy and a video of the controlled buy. *Id.* at 2-3. As Stewart acknowledges, Edwards told him about the video. R. 36 at 1. And the video was shown during

the preliminary hearing, at which Stewart was present. R. 38, Attach. 1 at 2. Even accepting Stewart's allegation that Edwards did not share the other pieces of discovery with him, there is no "reasonable probability" that Stewart would have chosen not to plead guilty if he had seen them. *Lockhart*, 474 U.S. at 59. The lab report and the tape recording of the phone call arranging the controlled buy were only relevant to the drug charges, both of which were dismissed. R. 12. And Stewart was already aware of his own criminal history. *See, e.g.,* R. 29 at 24 (acknowledging under oath his previous convictions). There is simply no way that seeing these materials would have led Stewart to change his mind about pleading guilty to the gun charge.

To the extent that Stewart is arguing that there may be additional discovery materials beyond those identified by Edwards, that allegation is simply too speculative to require a hearing under § 2255. Edwards stated in his affidavit that the lab report, criminal history, and CD were the only discovery materials that he received. R. 38, Attach. 1 at 3. This is not at all surprising. Discovery in criminal cases is relatively circumscribed. *See United States v. Phillip*, 948 F.2d 241, 255 (6th Cir. 1991) ("Discovery in criminal cases [is] more limited in its scope than in civil suits[.]"). For example, although the government must produce a witness's prior statements upon the defendant's motion, the government does not have to do so until *after* the witness testifies at trial. *See United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982) (citing 18 U.S.C. § 3500(b)). Therefore, it is highly likely that Edwards's affidavit is accurate, and that the only pieces of discovery that he received were the lab report, Stewart's criminal history, and the CD. The existence of additional discovery materials is entirely hypothetical and unsubstantiated.

Indeed, Stewart acknowledges that "to this date [he does not] know the information that was withheld." R. 36 at 2. In other words, Stewart has absolutely no idea whether additional discovery materials even exist. Granting him a hearing under § 2255 would be no different than issuing him a fishing license. That is not § 2255's purpose. Stewart "has not identified any evidence, other than his own testimony, that he could present to support his claim." *Amr*, 280 F. App'x at 485. Therefore, even if Stewart had requested an evidentiary hearing on his § 2255 motion (which he did not), such a hearing would not be appropriate because "the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. For this reason, the Court will dismiss Stewart's ineffective assistance of counsel claim.

**II.      Objections to Sentence Calculation**

The other two claims in Stewart's § 2255 motion both concern the calculation of his sentence, and they both run into a big roadblock—Stewart never challenged his sentence on direct appeal. Habeas review under § 2255 "is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal citation and quotation marks omitted). For this reason, courts have long held that challenges to a sentence are procedurally defaulted if a defendant fails to raise them on direct appeal. *See Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) ("Sentencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion. Normally, sentencing challenges must be made on direct appeal or they are waived."). A defendant can escape this procedural bar only by demonstrating "cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 U.S. at 622. Stewart does not assert that he is actually

innocent. And while his lawyer's "failure to perfect a direct appeal, in derogation of [Stewart's] actual request" would be a "per se violation of the Sixth Amendment," *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998), and would certainly excuse Stewart's procedural default, Stewart has only alleged that his lawyer advised against a direct appeal. R. 27 at 3 (explaining that Stewart did not appeal because "[m]y lawyer said it wouldn't help and advised me not to"). Simply advising against an appeal does not constitute ineffective assistance of counsel. *See Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). Therefore, as Judge Atkins concluded, Stewart has not demonstrated cause for his failure to challenge his sentence on direct appeal. His objections to his sentence are procedurally defaulted.

But even if the Court construes Stewart's pleadings broadly and finds a sufficient allegation of cause excusing his procedural default, he would still receive no relief because his two objections to the calculation of his sentence are meritless. Stewart first claims that the Court erroneously applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), which calls for an enhancement

> [i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.

Stewart argues that, because the substance involved in the controlled buy was not actually cocaine and the drug charges were dismissed, he did not use or possess the gun in connection with another felony. R. 27 at 5. Stewart first raised this objection at his sentencing hearing, and the Court rejected it after a lengthy colloquy with Stewart's counsel and counsel for the United States. R. 30 at 3-20. The objection lacked merit then, and it lacks merit now.

First, the dismissal of the drug charges is no bar to applying the enhancement based on the conduct underlying those charges. *See United States v. King*, 341 F.3d 503, 504, 507 (6th Cir. 2003) (upholding enhancement for using gun to commit felonious assault, even though assault was not charged in indictment); *United States v. Mayle*, 334 F.3d 552, 566 (6th Cir. 2003) ("[I]t is well established that a sentencing court is not prohibited from considering uncharged criminal conduct."). Further, as the Court explained at sentencing, this enhancement applies whether or not Stewart knew that the substance involved in the controlled buy was not cocaine. R. 30 at 19-20. If he believed that the substance was cocaine, then he "used or possessed" the gun "with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense," namely, selling the cocaine. U.S.S.G. § 2K2.1(b)(6). Further, sale of a sham narcotic is itself a felony under Kentucky law, *see Shanks v. Commonwealth*, 463 S.W.2d 312, 315 (Ky. 1971) ("[I]f one offers for sale what he reasonably believes to be a narcotic drug and it later turns out in fact not to be a narcotic, this is sufficient to support a conviction" under Kentucky law), and state-law felonies also qualify for the enhancement. U.S.S.G. § 2K2.1, cmt. 14(C).

On the other hand, if Stewart knew that the substance was not actually cocaine, he was still committing a crime—theft by deception. A Kentucky statute provides that "[a] person is guilty of theft by deception when the person obtains property or services of another by deception with intent to deprive the person thereof." Ky. Rev. Stat. § 514.040(1). The statute further provides that "[a] person deceives when the person intentionally . . . [c]reates or reinforces a false impression . . . as to law, value, intention or state of mind." *Id.* § 514.040(1)(a). If Stewart

knew that the substance was not actually cocaine, his attempt to sell it to the cooperating witness while representing that it was cocaine "create[d] . . . a false impression . . . as to . . . [the substance's] value," thereby bringing his conduct within Kentucky's theft-by-deception statute. *Id.* The crime is a Class D felony if the property involved is worth more than $500 but less than $10,000, and a Class C felony if the property is worth more than $10,000. *Id.* § 514.040(8)(a)-(b). Here, the affidavit accompanying the criminal complaint states that Stewart arranged to sell four ounces of crack cocaine to a cooperating witness at $1200 per ounce. R. 1, Attach. 2 ¶ 9. After Stewart was arrested, police officers weighed the substance he had in his possession and found that there was only 2.4 ounces. *Id.* ¶ 12. Multiplying either weight by the agreed-upon price easily elevates the crime to the level of a felony. Therefore, even if Stewart knew that the substance he was selling was not actually cocaine, he still "used or possessed [the] firearm . . . in connection with another felony offense," namely the state-law felony of theft by deception. U.S.S.G. § 2K2.1(b)(6). No matter which way you cut it, the Court properly applied the four-level enhancement found in § 2K2.1(b)(6).

Stewart's second objection to his sentence concerns his criminal history score. He contends that he wrongly received points for crimes for which he was neither convicted nor found guilty. R. 27 at 7. Stewart is mistaken. The Pre-Sentence Report ("PSR") assigned him thirteen criminal history points. Ten of the points were for five different offenses that Stewart committed as an adult. PSR at 7-10. The PSR indicates that Stewart either pled guilty to, or was found guilty of, each offense. *Id.* And Stewart received three additional points under U.S.S.G. § 4A1.1(d) and (e) because he committed the crime involved in this case while on parole and less

than two years after being released from prison on a previous conviction. *Id.* at 10. Therefore, Stewart's criminal history was calculated accurately. And besides, Stewart did not object to his criminal history score at sentencing. R. 30 at 20-21. Therefore, any challenge to it is waived. *See United States v. Bennett*, 291 F.3d 888, 899 (6th Cir. 2002).

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1) Judge Atkins's Report and Recommendation, R. 35, is **ADOPTED** and Stewart's objections, R. 36, are **OVERRULED**.

(2) Stewart's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, R. 27, is **DENIED**.

This the 2nd day of February, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge